UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DONALD O. WILLIAMS,

        Petitioner,

v.                                      Case No. 5:04-cv-427-Oc-10GRJ

SECRETARY, DEPARTMENT OF
CORRECTIONS,

        Respondent.

_____

## <u>REPORT AND RECOMMENDATION</u>[1]

This matter is before the Court on the Order of Reference (Doc. 44), which referred to the undersigned for evidentiary hearing one claim raised in Petitioner's amended habeas corpus petition pursuant to 28 U.S.C. § 2254  (Doc. 6).[2]  The Petition stems from Petitioner's 2001 Lake County *nolo contendre* plea and conviction of carjacking, for which Petitioner received a 30-year sentence, with 20 years suspended upon completion of a 20-year term of probation (five years of sex offender probation and 15 years of supervised felony probation).   App. tab A at 70-82.  Petitioner claims, *inter alia*, that his attorney denied him effective assistance of counsel by not following Petitioner's instructions to file a notice of appeal or motion to withdraw the plea.  Doc. 6. The Court conducted an evidentiary hearing, at which Petitioner was represented by appointed counsel.  The matter is now ripe for decision.  For the reasons discussed

_____

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] All of the other grounds raised by Defendant can be addressed adequately by reference to matters that appear of record.

below, the Court concludes that Petitioner is not entitled to relief on this claim.

## I. <u>BACKGROUND AND FACTS</u>

In his plea agreement, Petitioner conceded that the probable cause affidavit provided a sufficient factual basis for his plea.  App. tab A at 72.  According to the probable cause affidavit, the victim was sitting in her parked car at a Walgreens store.  A man entered the car, shoved the victim over, told her he had a gun, and drove away with the victim.  When the victim struggled, he slapped her in the face and again said that he had a gun.  He drove to a church parking lot where he sexually assaulted the victim.  A witness came upon the scene, and the victim jumped out of the car as the man tried to drive the car away.  The man abandoned the car two blocks from the Walgreens.  The police found Petitioner crawling in the bushes nearby.  The victim identified the Petitioner as the perpetrator.  <u>Id</u>. at 2-3.   No firearm was recovered, and the State initially declined to charge Petitioner with carjacking.  <u>Id</u>. at 7, 9.  Petitioner was charged by information with sexual battery, kidnaping, and grand theft.  <u>Id</u>. at 13-14.

On November 5, 2001, the day trial was to begin, Petitioner entered into a written plea agreement.  <u>Id</u>. at 70-73.  Pursuant to the plea agreement, the State entered an announcement of *nolle prosequi* for the three charges in the original information, and filed an amended information charging Petitioner with the single felony count of carjacking.  <u>Id</u>. at 83, 86.   According to the terms of the plea agreement, Petitioner affirmed that he was satisfied with his counsel's representation, stipulated that the facts were sufficient to support the charge of carjacking, and acknowledged that his plea was

voluntary and not coerced.  Id. at 72.  Petitioner agreed to waive his right to a jury trial

and other rights, and the plea agreement also expressly provided that "I have been

advised by my attorney that I hereby waive my right to appeal the judgment and

sentence of this Court, except appellate review of an illegal sentence or other form of

appropriate collateral review or appeal."  Id. at 73.

The trial court conducted a plea colloquy during which Petitioner, under oath,

affirmed that he had read the plea agreement, understood its terms, and had signed it

voluntarily.  Id. at 296-97.  Petitioner affirmed that he was satisfied with the advice of his

appointed counsel, Mr. Higgins.  Id. at 297.  The trial court inquired whether Petitioner

was under the influence of any drugs, alcohol, medication, or narcotics, to which the

Petitioner replied "No, sir."  Id.  The court found that Petitioner was competent,

understood the charges, had signed the plea agreement voluntarily, and that there was

a factual basis for the plea.  Id. at 298.  The court accepted the plea, adjudicated

Petitioner guilty, and sentenced him.  Id. at 298-99.

Petitioner did not file a direct appeal.  Over a year later, on November 27, 2002,

he unsuccessfully pursued postconviction relief pursuant to Fla. R. Crim. P. 3.850,

alleging, inter alia,  that he had been denied the effective assistance of counsel.  Id. at

103, 108-09.  Petitioner subsequently filed numerous motions and appeals, and

additional requests for postconviction relief, all of which were rejected by the state

courts.  See App. tab. A at 633, 656, 694; tab B-M; Doc. 43 (Supp. App. Exh. N), .

Petitioner then filed the instant Petition.  See Docs. 1, 6.

At the evidentiary, counsel for Petitioner presented the testimony of Jeffery

Higgins, Petitioner's court appointed trial counsel in the state court.  Mr. Higgins testified

3

that he prepared the handwritten draft plea agreement signed by Petitioner, and that the portion written by Mr. Higgins includes a 20-year probation term but does not mention sex offender probation.  Mr. Higgins could not recall how sex offender probation became part of the final plea agreement signed by Petitioner, but stated that it might have been in exchange for a reduction in the fine.

Mr. Higgins did not recall having any direct conversations with Petitioner regarding his sentence following the sentencing.  Apart from some bar complaints filed by Petitioner, Mr. Higgins did not recall receiving any written communication from Petitioner regarding his sentence.  Mr. Higgins was "virtually certain" that he had no conversations with Petitioner's partner, Shirley Harvey, following sentencing.  Mr. Higgins testified that neither Petitioner nor Ms. Harvey asked him to file an appeal on Petitioner's behalf, nor did anyone ask him to file a motion to withdraw the plea.  Mr. Higgins did not have any conversations with Petitioner following sentencing regarding his right to appeal.  Mr. Higgins did not consult with Petitioner following sentencing because it was not his typical practice to visit clients after sentencing, and he knew that Petitioner was "not shy about writing letters," and would have communicated with Mr. Higgins if he wanted anything.

On cross-examination, Mr. Higgins testified that if anyone other than Petitioner had asked him to file a notice of appeal or motion to withdraw the plea, he would have checked with Petitioner because no one else had the authority to direct him to do that. The draft plea agreement reflected that Petitioner had proposed a 10-year term of imprisonment plus 20 years suspended/probation, and that the state attorney had counter-offered with 15 years imprisonment, 15 years suspended/probation, and five

4

years of sex offender probation.  Mr. Higgins agreed that the final terms of the plea

agreement, giving Petitioner a 10-year term of imprisonment plus 20 years of probation,

including 5 years of sex-offender probation, and a reduction in the fine, was more

favorable to Petitioner than the terms initially offered by the state.

Petitioner's counsel at the evidentiary hearing also offered the testimony of Ms.

Harvey.  She testified that a few days after sentencing, Petitioner let her know that he

"wasn't happy with the outcome" of his case and asked her to "tell the attorney."  Ms.

Harvey said she went to Mr. Higgins two or three days later and told him that Petitioner

was not happy with the outcome, and told Mr. Higgins to get in contact with Petitioner.

She did not advise Mr. Higgins that Petitioner wanted to take any particular action

regarding his case.  Mr. Higgins did not indicate that he would go speak with Petitioner.

Neither Petitioner nor Respondent presented any further testimony or evidence

at the hearing.

## II.  <u>LEGAL ANALYSIS</u>

Claims of ineffective assistance of counsel are subject to the two-prong analysis

set out by the Supreme Court in <u>Strickland v. Washington</u>.[3] To make a successful claim,

Petitioner must show (1) that his counsel's performance was deficient, and (2) that the

deficient performance prejudiced the defense.[4]

Although the right to appeal is not necessarily a constitutional right, there is little

question that failure to pursue an appeal results in the denial of a proceeding altogether,

---

[3] 466 U.S. 668 (1984).

[4] *Id.* at 687.

thus implicating a denial of due process.[5]  In examining whether there is defective performance by counsel under the first prong of Strickland - where the claim of ineffective assistance of counsel, as here, is premised on the failure to file an appeal - the inquiry begins with the question of whether counsel consulted with the defendant about an appeal.[6] If counsel has discussed with the defendant the advantages and disadvantages of taking an appeal, and made a reasonable effort to discover the defendant's wishes, counsel performed in a professionally unreasonable manner only if counsel failed to follow the defendant's express instructions to file an appeal.[7]  If it is determined that "counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance."[8] However, "counsel only has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[9]

Based on the evidence presented at the hearing, the Court determines that Petitioner has failed to show deficient performance by Mr. Higgins under the Flores-

---

[5] Martinez v. Court of Appeal of California, 528 U.S. 152 (2000).

[6] Roe v. Flores-Ortega, 528 U.S. 470 (2000).

[7] *Id.* at 478.

[8] *Id.*

[9] *Id.* at 480.

Ortega standard.   The Court finds that the uncontroverted testimony at the hearing establishes that Mr. Higgins did not consult with Petitioner regarding the advantages and disadvantages of pursuing an appeal.  Accordingly, the Court must analyze Petitioner's claim under the second step of the Flores-Ortega standard and determine whether such failure itself constitutes deficient performance because a rational defendant would want to appeal or because Petitioner demonstrated an interest in appealing.

As to the latter question, Mr. Higgins' testimony that Petitioner never told him to appeal, which the Court finds to be credible and probative, supports a finding that Petitioner did not demonstrate an interest in appealing.  Petitioner's conclusional assertions in his pleadings are insufficient to overcome such evidence.  The state court record, with hundreds of pages of motions and pleadings drafted by Petitioner, supports Mr. Higgins' testimony that Petitioner was well able to communicate his wishes concerning his case.  There is no evidence in the record that Petitioner made any written requests to Mr. Higgins to file an appeal.  Even after the period had expired for filing an appeal, the Petitioner never sent Mr. Higgins any written communication inquiring as to the status of an appeal or complaining that an appeal had not been filed. The absence of any such communication is highly suggestive of the conclusion that Petitioner never demonstrated to Mr. Higgins that Petitioner wanted to appeal.  Even if the Court credits Ms. Harvey's testimony that she met with Mr. Higgins following Petitioner's sentencing, she did not testify that she told Mr. Higgins that Petitioner wanted to file an appeal, but only told him that Petitioner was "not happy."  Plainly, such a vague communication from a non-client is insufficient to support a conclusion that

Petitioner demonstrated an interest in appealing.

Further, Petitioner has failed to show that a rational defendant would have wanted to appeal.  The testimony at the evidentiary hearing and the state court record reflects that Petitioner's plea agreement was the result of lengthy negotiations culminating in a highly favorable outcome for Petitioner relative to the initial charges, which included a kidnaping charge for which he faced a potential life sentence.   It is undisputed that the written plea agreement in this case contained a waiver of Petitioner's right to appeal his conviction and sentence, with limited exceptions such as the right to seek appellate and collateral review of an "illegal" sentence.  Although Petitioner's counsel at the evidentiary hearing argued that the sex-offender probation component of Petitioner's sentence is arguably illegal since Petitioner was convicted of carjacking and not of a sex offense, the record of the plea colloquy reflects that Petitioner assented to that aspect of the negotiated sentence, and affirmed under oath that the plea was in his own best interests.  A rational defendant would have had no reason to want to appeal an issue that resulted in significant favorable benefit to him.[10]

For the foregoing reasons, the Court concludes that the evidence presented by the Petitioner does not establish that a rational defendant in Petitioner's circumstances would have wanted to appeal or that Petitioner reasonably demonstrated to his lawyer that he wanted to appeal the sentence he received in this case. Accordingly, Petitioner has failed to establish under Flores-Ortega that Mr. Higgins had a constitutionally imposed duty to consult with Petitioner about an appeal. As such, Petitioner's habeas

---

[10]The Respondent stated at the evidentiary hearing that Petitioner can raise the issue of the legality of his sentence at any time by way of a motion under Fla. R. Crim. P. 3.800(a).   The state court record reflects that Petitioner unsuccessfully pursued this claim in his postconviction motions.

corpus claim that the performance of his counsel was deficient for failing to file a notice of appeal is due to be denied.

### III.  RECOMMENDATION

In view of the foregoing it is respectfully **RECOMMENDED** that Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **DENIED** as to the issue discussed herein.

**IN CHAMBERS** at Ocala, Florida this 1st day of August 2008.

_____
GARY R. JONES
United States Magistrate Judge

c:      Hon. Wm. Terrell Hodges,
        United States District Judge

        Counsel of Record